J-A15001-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| CHRISTINA ISAACKS NKA CHRISTINA PISANO | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| JOHN ISAACKS | : | |
| Appellant | : | No. 1237 WDA 2021 |

Appeal from the Order Entered September 23, 2021
In the Court of Common Pleas of Jefferson County Civil Division at No(s):
2018-00662

BEFORE: BOWES, J., KUNSELMAN, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.: **FILED: SEPTEMBER 13, 2022**

John Isaacks ("Father") appeals the September 23, 2021 custody order that awarded Christina Isaacks ("Mother") primary physical custody of their two sons, T.I. and J.I. We affirm.

T.I. was born to Mother and Father in August 2010 while the couple lived in Pennsylvania. Approximately eighteen months later, the parties moved to Georgia and married in 2012. J.I. was born of the marriage in October 2015. To varying degrees, both children have special needs involving either developmental delays or a speech impediment. The parties separated during 2018. Mother returned to Pennsylvania, where she exercised primary physical custody of the children with Father's consent.

Father remarried and currently resides with his wife, Nancy, in Ellijay, Georgia. He is employed as a Software Engineer for Brody, Inc. As the

position is 100% remote, Father enjoys maximum flexibility in his employment schedule.

Mother initiated a relationship with Adam Zimmerman, the father of her youngest child, a daughter, with whom she and the boys intermittently resided near Brookville, Pennsylvania. Father has leveled allegations of physical and emotional abuse against Mr. Zimmerman, which led Mother to eventually stipulate in a consent order providing that "The children shall not be left unsupervised in the presence of Adam Zimmerman." Custody Order, 5/28/20. Specifically, Father asserts that Mr. Zimmerman was mean to the children, tripped J.I., threw an object at him, and called the child "a little bitch." Father's brief at 74. On a different occasion, Mr. Zimmerman playfully wrapped T.I.'s head in a blanket for approximately four seconds, but the incident frightened the young child. N.T. Custody Trial, 8/13/21, at 373-75, 463-64. Mr. Zimmerman has pulled similar stunts on J.I., Mother's daughter, and Mr. Zimmerman's son from a previous relationship. *Id*. at 376-77, 464.

Mother's relationship with Mr. Zimmerman deteriorated after the tripping incident, which Mother characterized as an "unacceptable," "shitty thing" and since March 1, 2021, she and the three children lived alone. *Id*. at 460, 464. She is not currently involved in a romantic relationship. Mother's parents and extended family, with whom the children share close relationships, also live in the Brookville area. Finally, Mother is employed as a manager at a local restaurant, the Courthouse Grill and Pub.

- 2 -

Since August 7, 2018, the parties have followed a custody order that granted Mother primary physical custody of the children and shared legal custody. The order was most recently modified by consent in May 2020, in order to adjust aspects of the physical custody schedule, outline the details of the custody transfers, and include the stipulation prohibiting Mr. Zimmerman from having unsupervised contact with T.I. and J.I.

On February 5, 2021, Father filed the motion for modification that is the genesis of this appeal. He sought to exercise primary physical custody of T.I. and J.I. in Georgia. Following an evidentiary hearing, the trial court entered the above-referenced custody order awarding Mother primary physical custody and granting Father periods of partial physical custody that are substantially similar to the prior custody schedule. Generally, the court awarded Father partial physical custody during Thanksgiving break, Christmas break, nearly the entirety of summer vacation, and "other times as the parties may agree." Custody Order, 9/23/21, at 2. The trial court also provided detailed expectations regarding the parties' obligations during the transfer of physical custody, including a directive to share the cost of airfare if the children travel without supervision. *Id*. The order also directed the parties to facilitate contact between the children and the non-custodial parent, and precluded either party from allowing the children to be around any person who is under the influence of drugs or alcohol. *Id*.

Contemporaneous with the custody order, the trial court issued its findings of fact, conclusions of law, and a delineation of the custody factors set forth in 23 Pa.C.S. § 5328(a). This timely appeal followed.

Father asserted seventeen issues in the concise statement of errors complained of on appeal that he filed contemporaneously with the notice of appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). One of the several issues that Father raised in his concise statement related to the court's failure to consider the relocation factors outlined in § 5337(h) of the Custody Act. In addressing this issue in the ensuing Rule 1925(a) opinion, the trial court determined that a concurrent analysis of the relocation factors was not warranted because neither party sought to relocate with the children.

Father lists ten questions for our review:

I. Did the trial court err and/or abuse its discretion by entering an order denying Father's request for primary residential custody and establishing a custody order without considering, delineating and assessing the custody relocation factors set forth in 23 Pa.C.S. § 5337(h) because [F]ather is seeking a change in custody which, if granted, will result in the children moving a significant distance?

II. Did the trial court err and/or abuse its discretion by entering an order that is contrary to the best interest of the children when it determined that the Mother should have primary residential custody?

III. Did the trial court err and/or abuse its discretion by not properly applying the factors set forth in 23 Pa.C.S. § 5328(a)(1) "Which party is more likely to encourage and permit frequent and continuing contact between the children and another party"?

IV. Did the trial court err and/or abuse its discretion by not properly applying the factor set forth in 23 Pa.C.S. § 5328(a)(10): "Which party is most likely to attend to the daily, physical,

- 4 -

emotional, developmental, educational and special needs of the children . . ."?

V. Did the trial court err and/or abuse its discretion by not properly applying the factor set forth in 23 Pa.C.S. § 5328(a)(13): "The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another."

VI. Did the trial court err and/or abuse its discretion [by] not properly applying the 23 Pa.C.S. § 5328(a)(2): "The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child . . ."?

VII. Did the trial court err and/or abuse its discretion by not properly applying the factor set forth in 23 Pa.C.S. § 5328(a)(4): "The need for stability and continuity in the child's education, family life and community life."

VIII. Did the trial court err and/or abuse its discretion by not properly applying the factor set forth in 23 Pa.C.S. § 5328(a)(12): "Each party's availability to care for the child or ability to make appropriate child-care arrangements."

IX. Did the trial court err and/or abuse its discretion by not properly applying the factor set forth in 23 Pa.C.S. § 5328(a)(16): "Any other relevant factor."

X. Did the trial court err and/or abuse its discretion by removing the provision in the prior order which states: "The children shall not be left unsupervised in the presence of Adam Zimmerman."

Father's brief at 8-11 (cleaned up).

We apply the following standard and scope of review.

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. . . . However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. . . . Thus, an appellate court is empowered

to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009) (quoting *Bovard v. Baker*, 775 A.2d 835, 838 (Pa. Super. 2001)). Moreover,

[O]n issues of credibility and weight of the evidence, we defer to the findings of the trial [court] who has had the opportunity to observe the proceedings and demeanor of the witnesses.

The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*R.M.G., Jr.*, *supra* at 1237 (internal citations omitted). The test is whether the evidence of record supports the trial court's conclusions. *Ketterer v. Seifert*, 902 A.2d 533, 539 (Pa. Super. 2006).

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa.Super. 2014).

"[I]t is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, based on the evidence presented, given due deference to the trial court's weight and credibility determinations, the trial court erred or abused its discretion in awarding custody to the prevailing party." *E.B. v. D.B.*, 209 A.3d 451, 468 (Pa.Super. 2019) (citation and some quotation marks omitted). We have explained,

- 6 -

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*D.Q. v. K.K.*, 241 A.3d 1112, 1117 (Pa.Super. 2020) (quoting *Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa.Super. 2006)).

Child custody actions are governed by the Child Custody Act, 23 Pa.C.S. §§ 5321-5340. The primary concern in any custody case is the best interests of the child. The Custody Act sets forth the following sixteen custody factors that the trial court must consider when awarding any form of custody:

**5328. Factors to consider when awarding custody.**

**(a) Factors.** – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Instantly, the trial court carefully considered the foregoing custody factors and explained its rationale for granting Mother primary physical custody. The court determined that factors three, nine, and sixteen favored Mother, no factors militated in favor of Father, and the remaining factors were either neutral or inapplicable. *See* Finding of Fact and Conclusion of Law, 9/23/21, unnumbered at 16-18. As to the catchall factors under (a)(16), the court summarized its rationale, in pertinent part, as follows:

> The factor that tilts the scale in favor of Mother is the fact that, just three years ago, Father believed the children would be better served by living with Mother. The children have done well in Mother's care and they will continue to do well in her care. . . . Father testified that his primary factor [in seeking to modify the custody arrangement] essentially was the [continued presence of Adam Zimmerman in the household] . . . , and the fact [Father] felt that the children were not doing well educationally, saying this only after he testified multiple times he felt there were significant delays in both children even when they were in his care. The testimony of Ms. [Brittany] Nowacki from Brookville School District, explains the grades are indicative of their performance and both children are doing well in school although they have some disability issues, those issues are being addressed in Brookville School District and the children are doing very well educationally and socially.

*Id*. at 18.

Father's first issue asserts that the trial court erred in failing to supplement its consideration of the foregoing best-interests factors with a review of the ten relocation factors outlined in § 5337(h).[1] Relying upon our

_____

[1] That section of the Custody Act provides as follows:

**(h) Relocation factors.--**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

discussion in **D.K. v. S.P.K.**, 102 A.3d 467, 476 (Pa.Super. 2014), concerning the interplay between the best-interest factors and relocation factors in custody cases where "the children stand to move a significant distance," he asserts that the trial court erred in failing to perform the § 5337(h) analysis. Father's brief at 31-34.

In **D.K. v. S.P.K.**, we announced that in a case where a child would have to move a significant distance as a result of a custody determination, the trial court should incorporate the relevant factors of § 5337(h) in its § 5328(a) best-interests analysis. **Id**. at 476. In making this determination, we recognized that the § 5328(a) factors "encompassed, directly or implicitly," several of the relocation factors. **Id**. at 478. Hence, we concluded, "Any relevant section 5337(h) factor that is not expressly encompassed in section 5328(a) should be considered by the trial court under the catchall provision of section 5328(a)(16)." **Id**.

As Father seeks primary physical custody of T.I. and J.I., his petition for modification raises the possibility that the children will be required to move a

---

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h).

- 11 -

significant distance from Brookville, Pennsylvania to Ellijay, Georgia. Thus, noting that the trial court neglected to perform a formal analysis of the enumerated relocation factors, Father contends the trial court committed reversible error and requests that we "remand the matter back to the trial court for application of the relocation factors." Father's brief at 34. For the following reasons, remand is unnecessary.

As noted *supra*, **D.K**. **v. S.P.K.** does not require a full analysis of the ten relocation factors. Instead, that Court recognized that many of the relocation factors are addressed in the statutory analysis of the best-interest factors listed in § 5328(a). Specifically, the relocation factors outlined in § 5337(h)(1), (h)(4), (h)(5), and (h)(9) are subsumed by the correlating best-interest factors listed in § 5328(a)(2), (a)(3), (a)(5), (a)(6), (a)(7), and (a)(8). **Id**. at 102. Moreover, the two relocation factors discussed in § 5337(h)(6) and (h)(8) are not relevant because they relate directly to the parties to the dispute rather than the best interests of the children. Thus, it is apparent from our rationale in **D.K. v. S.P.K** that § 5328(a) encompasses all but three of the pertinent relocation factors, (h)(2), (h)(3), and (h)(7). **Id**. Those three factors address, *inter alia*, the impact of relocation on the child's emotional development, the logistics of preserving the relationship with the non-custodial parent, and the possible enhancement to the child's quality of life, respectively.

Thus, while Father is correct that the trial court misapprehended its mandate by concluding that § 5337(h) was entirely inapplicable in this case, remand is not required. The trial court issued a comprehensive discussion of the applicable § 5328(a) best interest factors, which encompassed all but three relocation factors. As to those three factors, Father's brief neglects to identify which pertinent factors, if any, the trial court neglected to incorporate into its best-interest analysis. Although Father asserted in the Rule 1925(b) statement that the trial court erred in failing to address relocation factors (h)(2), (h)(3), (h)(7) and (h)(9), he abandoned those claims by neglecting to present any supporting argument in his brief. *See Commonwealth v. Heggins*, 809 A.2d 908, 912 n.2 (Pa.Super. 2002) (citation omitted) (stating, issues raised in concise statement but abandoned in appellant's brief are waived).

Moreover, to the extent that Father's argument was preserved by the general assertions in his brief, it fails on the merits. We note that, while not identified as such by the Court in *D.K. v. S.P.K.*, the substance of § 5337(h)(2), concerning the impact of relocation on the child's physical, educational and emotional development, in light of his developmental stage, and special needs, correlates with § 5328(a)(9) and (a)(10), which are designed to identify the party who is more likely to serve the child's emotional needs and attend his physical, emotional, developmental, educational and special needs. Instantly, the trial court determined that (a)(9) militated in

Mother's favor because she has demonstrated her ability to serve the children's emotional needs despite the added pressure of Father's heightened expectations of the children's progress. Furthermore, (a)(10) was determined to be neutral insofar as "Both [parents] are equally likely to attend to the daily physical, emotional, developmental, educational and special needs of the children." **See** Finding of Fact and Conclusion of Law, 9/23/21, unnumbered at 17. Hence, the trial court implicitly addressed the crux of (h)(2) in its determination of § 5328(a)(9) and (a)(10).

Similarly, the trial court addressed the import of (h)(3) and (h)(7); first, by crafting a detailed custody order that specifically addressed the constraints of long-distance custody exchanges while preserving the children's communication with the non-custodial parent; and second, in detailing the children's continued development with Mother and progress in the Brookville Area School District. Finally, the § 5328 (a) best-interest factor concerning the potential abuse of party's household correlates directly with § 5337(h)(9), and, as discussed, *infra*, the certified record supports the trial court's determination that Mother addressed the potential risk of harm that Mr. Zimmerman posed to the children. Thus, notwithstanding Father's protestations to the contrary, the trial court complied with our holding in **D.K. v. S.P.K.** by evaluating the relevant relocation factors in its best-interest analysis. Hence, this claim fails.

Next, we address Father's claim that the custody schedule does not serve the best interests of T.I. and J.I. because it failed to maximize the duration and frequency of his custodial periods. Father's brief at 21. He contends that his proposed custodial arrangement, wherein he exercises primary physical custody, provided the non-custodial parent "considerably more time." *Id*. at 22, 34-40. For the following reason, no relief is due.

First, this issue is waived because Father did not include any issue challenging the custody schedule in his Rule 1925(b) statement, and the trial court did not confront it. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived."). Our review of Father's Rule 1925(b) statement reveals two general assertions that could theoretically subsume the argument that he raised on appeal: issue six, "The Trial Court erred and/or abused its discretion by entering an Order that is contrary to the best interest of the children when it determined that the Mother should have primary residential custody;" and issue fourteen, "The Trial Court erred and/or abused its discretion by entering an Order that was inconsistent with the facts in the record and contrary to the best interest of the children." Father's Rule 1925(b) Statement, 10/15/21, unnumbered at 2, 3. All of the remaining issues challenged specific aspects of the trial court's custody analysis that did not implicate the custody schedule in any manner.

In confronting these two general assertions, the trial court referred to its best-interest analysis as supported by its factual findings and the evidence

presented during the evidentiary hearings. Accordingly, the court did not address any issue concerning the duration or frequency of Father's custodial periods. Since Father did not state his claim of error with sufficient specificity to allow the trial court to consider the challenges to the custody schedule and explain the reasons for its ruling, we are unable to determine whether any abuse of discretion occurred. Therefore, the issue is waived. *See* Pa.R.A.P. 1925(b)(4)(vii).

Nevertheless, in an abundance caution, we address the issue briefly and note that the trial court addressed all the statutorily mandated best-interest factors outlined in § 5328(a) in awarding Mother primary physical custody and in fashioning a custody schedule that serves the best interests of both children. Father's brief provides an in-depth critique of the custody schedule. However, he neglects to provide any legal authority for the proposition that we are authorized, much less bound, to nullify the custody schedule because his proposed schedule purports to increase the frequency and duration of the periods of custody for the non-custodial parents. This omission is particularly salient in light of the fact that the order specifically requires the parties to facilitate communication between the children and the non-custodial parent. Hence, even if Father had raised this claim in his Rule 1925(b) statement, which he did not, it would fail. Plainly, the trial court did not abuse its discretion in crafting a custody schedule that was consistent with the arrangement that the children have enjoyed since 2018.

The gravamen of Father's remaining challenge to the best-interest determination is that the court "abus[ed] its discretion by not properly applying [various] factor[s.]" Father's brief at 8-10. He specifically assails the court's analysis of factors one, two, four, ten, twelve, thirteen and sixteen. In support of these claims, Father uniformly credits his own testimony during the hearing as evidence that the trial court misapplied the various factors. Again, no relief is due.

Of the eight best-interest factors implicated in this aspect of Father's argument, only factor sixteen favored Mother for the reasons that we discuss *infra* in relation to Mother's efforts to protect the children from Mr. Zimmerman. The court determined that all the remaining factors were either inapplicable[2] or neutral because both parents demonstrated equal capabilities relevant to the qualities outlined in the factors and revealed themselves to be more cooperative than they realized. ***See*** Finding of Fact and Conclusion of Law, 9/23/21, unnumbered at 16-18. Father's assertions

_____

[2] The trial court's Finding of Fact and Conclusion of Law stated that factor two, concerning abuse by household member and the risk of harm to the children, was "N/A," ostensibly because the court no longer viewed Mr. Zimmerman as a risk of harm once he was removed from Mother's household. The trial court subsequently made this express determination in the Rule 1925(a) opinion, finding that Mother eliminated the potential risk of harm associated with her former paramour. We address the propriety of the court's determination in relation to Father's argument in favor of the no-contact stipulation.

simply ask that we reweigh the evidence adduced during the hearing to reach conclusions in his favor. For the following reasons, his arguments fail.

It is axiomatic that a party cannot dictate the weight that the trial court attributed to the evidence or its consideration of any single factor. Indeed, as we explained in **M.J.M. v. M.L.G.**, 63 A.3d 331, 339 (Pa.Super. 2013), "it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." We simply will not revisit the trial court's factual findings that are based on the certified record to reassess the weight of the evidence. **J.R.M. v J.E.A.**, 33 A.3d 647, 650 (Pa.Super. 2011) ("[W]ith regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand[.]"). Thus, inasmuch as the certified record sustains the trial court's findings of fact, we do not disturb them. **See Ketterer**, **supra** at 539 (pertinent test in reviewing custody order is whether evidence of record supports the trial court's conclusions.). Having reviewed the certified record, we discern neither an abuse of discretion nor legal error in the trial court's best-interest analysis pursuant to § 5328(a).

Finally, we address Father's assertion that the trial court erred in failing to append to the instant custody order the stipulation that the children will not be left unsupervised in the presence of Mr. Zimmerman. In rejecting this contention, the trial court deemed credible Mother's testimony that she terminated her romantic relationship with Mr. Zimmerman and does not

interact with him beyond what is necessary to co-parent their daughter. It also credited Mother's testimony that she would not subject the children to inappropriate treatment in any manner. The trial court reasoned,

> [T]his Court did not feel, based on the presentation of evidence, that [the stipulation] is appropriate. Adam Zimmerman is no longer a member of Mother's household and Mother would not use him as a caretaker. The Court believes Mother was credible in her testimony regarding ending the relationship with Adam Zimmerman. As such, the Court did not enter the condition in the Order.
>
> Because Mother no longer has a relationship and she would not allow Zimmerman to care for the children, it would be inappropriate to ban the father of a . . . [child] who lives with her mother in that residence from that residence and from ordinary family contact. There was not evidence presented that Zimmerman currently presents a danger to the children. As such, the Court did not feel a need to enter what Mother offered as a stipulation[.] . . . It is not an abuse of discretion and, as such, the Superior Court should affirm [the t]rial [c]ourt's decision.

Rule 1925(a) Opinion, 10/26/21, at 2.

Our review of the certified record supports the trial court's finding. During the evidentiary hearing, Mother testified that she removed Mr. Zimmerman from her residence during March 2019, rekindled the relationship for a few months in 2020, but has not had any significant contact with him since March 2021, when she leased a residence for herself and her children. N.T., Custody Hearing, 8/13/21, at 315-16, 361-62, 392-93. Mother and Mr. Zimmerman simply co-parent their daughter with no intention of reviving the romance. *Id*. at 394, 396. Mother explained, "I want to maintain, like, a healthy co-parenting relationship with him hopefully to the point where

it doesn't lead to custody disputes." *Id*. at 396. Upon further inquiry by the trial court, she noted, "it's not my intention to pursue any kind of relationship based romantically with him." *Id*. at 397, *see also id*. at 496. Moreover, Mother not only agreed that it is in the best interest of the children to limit any contact with Mr. Zimmerman and took the initiative to preclude any unsupervised contact, but she also testified that she never left the boys with Mr. Zimmerman since the tripping incident of March 2019. *Id*. at 360-61; 496-97. As the certified record supports the trial court's determination that the inclusion of the non-contact stipulation was not necessary, we reject Father's contention that the court erred in omitting it.

Accordingly, for all of the forgoing reasons, we affirm the custody order awarding Mother primary physical custody to T.I. and J.I.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  09/13/2022

- 20 -